IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:12-cr-00130-1 |
| v. ) | |
| ) | Judge Nixon |
| DAKOTA LATRACON CARVER ) | |

## ORDER

Pending before the Court is Defendant Dakota Latracon Carver's Motion to Exclude Government's Use of Defendant's Guilty Plea ("Motion"), in which he requests the Court suppress a guilty plea he entered into in state court, and any statements made in support of the plea. (Doc. No. 52.) The Government filed a Response (Doc. No. 54) and three exhibits (Doc. Nos. 54-1 to 54-3). For the following reasons, Mr. Carver's Motion is **DENIED**.

I. BACKGROUND

*A. Wilson County Charges*

On May 29, 2012, Mr. Carver was scheduled for trial before Judge David E. Durham in Wilson County Criminal Court, on a charge of aggravated assault. (Doc. No. 54-2 at 10.) Instead, Mr. Carver entered a voluntary plea of guilty ("Guilty Plea"), following a colloquy conducted by Judge Durham. (*See* Doc. No. 54-2.) Judge Durham asked Mr. Carver whether he understood that his "answers here . . . in this courtroom [could] literally be used anywhere else in the world against [him], whether it be a parole hearing, another courtroom, administrative hearing, probably even on job applications." (*Id.* at 2.) Mr. Carver responded that he understood. (*Id.*)

Assistant District Attorney ("ADA") Tom Swink drafted Mr. Carver's plea agreement to include language indicating that Mr. Carver's state sentence should run consecutive to any

1

federal sentence "likely to follow." (*Id.* at 3.) During the colloquy, Judge Durham questioned whether the state court had the authority to order Mr. Carver's state sentence to run consecutive to a federal sentence that had not yet been imposed. (*Id.* at 6–7.) After a discussion on the record, ADA Swink agreed to amend the plea form to omit the language about consecutive sentencing. (*Id.* at 7; *see* Doc. No. 54-1.) Judge Durham then asked Mr. Carver, "[s]o, what you're going to get here is five years, to serve a year split, and then whatever happens in federal court happens in federal court, and whatever happens on your cases still pending here just happens. Is that your agreement?" (Doc. No. 54-2 at 7.) Mr. Carver replied, "[y]es, sir." (*Id.*)

ADA Swink then recited the facts of the case as follows:

> [O]n June 3, 2010, Lebanon Police officers were dispatched to 725 York Street in Lebanon, Wilson County, in reference to a victim of a gunshot wound. When they arrived, officers made contact with the victim in this case, William Hurd. The victim, Mr. Hurd, advised that he was walking down Inman Court toward [sic] York Street when a black male, who he identified as Dakota Carver, this Defendant here today, came up to him with a gun and fired at him several times. Mr. Hurd was shot in the arm. He was sent to Vanderbilt emergency room for treatment of his injuries. The State would also call two other witnesses, an Ashley Windorf who would also identify Mr. Carver as the shooter, and a Robert Corder, who would also identify Mr. Carver as the shooter of William Hurd on June 3, 2010.

(*Id.* at 9.) Judge Durham asked Mr. Carver whether he had discussed the above facts and the rest of the state's evidence with his attorney. (*Id.*) Mr. Carver responded that he had. (*Id.*) Judge Durham then asked Mr. Carver, "do you agree and admit . . . that had that case been tried today, the State would have enough proof to be able to convince that jury beyond a reasonable doubt that you are in fact guilty of the crime with which you are pleading guilty, that being aggravated assault?" (*Id.* at 10.) Mr. Carver responded, "[y]es, sir." (*Id.*)

2

Judge Durham next discussed the constitutional rights Mr. Carver was giving up by entering the Guilty Plea and again made reference to Mr. Carver's charges in federal court. (*Id.* at 11–12.) Judge Durham found that Mr. Carver had voluntarily and intelligently entered the Guilty Plea, and again noted on the record his uncertainty about the status of Mr. Carver's federal charges. (*Id.* at 13.)

### B. Federal Charges

Mr. Carver was indicted in this Court on September 10, 2012, on charges of being a convicted felon in possession of a firearm and possession with intent to distribute cocaine, in violation of 18 U.S.C. §§ 922(g)(1), 924, and 21 U.S.C. § 841(a)(1). (Doc. No. 12.) On December 20, 2012, the Government filed a superseding indictment, adding two charges of drive-by shooting and two charges of carrying, brandishing, and discharging a firearm, in violation of 18 U.S.C.§§ 36(b)(1), (2), §§ 924(c)(1)(A), and (c)(2). (Doc. No. 34.) Specifically, Counts 1 and 2 of the Superseding Indictment relate to the same June 3, 2010, incident for which Mr. Carver entered the Guilty Plea.

On April 5, 2013, Mr. Carver filed the present Motion, in which he requests the Court prevent the Government from introducing at trial his Guilty Plea and supporting statements. (Doc. No. 52.) The Government filed a Response on April 10, 2013, stating that Mr. Carver has no basis for the Motion because his Guilty Plea is legally valid, admissible, and relevant to this case, and that Mr. Carver has not demonstrated that admitting the Guilty Plea would be unduly prejudicial. (Doc. No. 54 at 1–2.) The Court held a hearing on the Motion on May 22, 2013, during which attorney Ed Swinger, Mr. Carver's counsel in the state-court proceedings, testified. (*See* Doc. Nos. 60; 61.)

II. ANALYSIS

Mr. Carver raises two arguments for why the Court should suppress his Guilty Plea and statements in support: (1) the Guilty Plea was based on ineffective assistance of counsel, and thus, was not knowing and voluntary; and (2) the Guilty Plea and statements are inadmissible under the Federal Rules of Evidence because they are irrelevant and unduly prejudicial. (Doc. No. 52 at 5–9.) The Court addresses the issues in turn.

*A. Voluntariness of Plea based on Ineffective Assistance of Counsel*

"It is well settled that a guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party opponent." *United States v. Cutwright*, 16 F.3d 1221, at *2 (6th Cir. 1994) (unpublished table decision) (quoting *United States v. Maestas*, 941 F.2d 273, 278 (5th Cir. 1991)). A guilty plea is valid, and thus admissible, only if it was voluntarily and intelligently made. *United States v. Odom*, 42 F.3d 1389, at *3 (6th Cir. 1994) (unpublished table decision) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1968)).

For a plea to be voluntary and intelligent, it "must be made with knowledge of the 'relevant circumstances and likely consequences.'" *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). However, once a guilty plea is accepted by a court and the conviction becomes final, a "presumption of regularity" attaches, allowing other courts to presume the validity of the conviction. *See Parke v. Raley*, 506 U.S. 20, 30 (1992).

Seeking "to deprive [previous convictions] of their normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgments" is considered a collateral attack. *Id.* (citing Black's Law Dictionary 261 (6th ed. 1990)). Permitting a collateral attack on a prior state-court conviction in an unrelated proceeding is

4

impermissible because it "would 'inevitably delay and impair the orderly administration of justice' and 'deprive the state-court judgment of its normal force and effect.'" *Daniels v. United States*, 532 U.S. 374, 378–79 (2001) (quoting *Custis v. United States*, 511 U.S. 485, 497 (1994)) (finding 28 U.S.C. § 2255 hearings and sentencing hearings inappropriate fora for litigating collateral attacks on the voluntariness of a defendant's prior state-court conviction, with an exception for claims that the defendant was deprived of his right to counsel under the Sixth Amendment). "Our system affords a defendant convicted in state court numerous opportunities to challenge the constitutionality of his conviction. . . . [Including] on direct appeal, in postconviction proceedings available under state law, and petitions for a writ of habeas corpus . . . ." *Id.* at 381.

Mr. Carver argues that his Guilty Plea was not voluntary because it was the result of constitutionally defective assistance of his state-court counsel. (Doc. No. 52 at 5–6.) Mr. Carver contends that his counsel's failure to inform him that the Guilty Plea could be used against him in a subsequent federal prosecution amounted to ineffective assistance of counsel ("IAC"). (*Id.*) While Mr. Carver concedes that this Court does not have jurisdiction to adjudicate an IAC claim against Mr. Carver's state-court counsel in this proceeding (as it would be a collateral attack not appropriately raised in this forum), he argues the Court should use the fact that he intends to pursue an IAC claim in state court as relevant to its determination of whether Mr. Carver's statements in support of the Guilty Plea were made knowingly and voluntarily. (*Id.*) The Government responds that Mr. Carver's argument fails as a matter of law because Mr. Carver's state-court counsel was not constitutionally required to inform him of the potential effects the Guilty Plea might have on subsequent federal prosecution. (Doc. No. 54 at 3–4.)

The Court has not found, and Mr. Carver has not cited, any controlling authority that squarely addresses whether a federal court can evaluate the voluntariness of statements made in support of a state-court guilty plea based on the same underlying conduct charged in federal court, for the limited purpose of the admission of the statements at trial. Mr. Carver instead cites an unpublished opinion from the Middle District of Georgia, faced with a similar suppression issue to that presented in this case. (Doc. No. 52 at 6.) In that case, the court held that, while it did not have authority to vacate a defendant's state court conviction based on ineffective assistance of counsel, "even for the limited purpose of [suppressing admission of the conviction at trial]," it could exclude the defendant's admissions made in the state plea proceeding if it determined that the defendant's state-court guilty plea was involuntary. *United States v. Vanderson*, No. 4:10-CR-34 (CDL), 2011 WL 553918, at *3 (M.D. Ga. Feb. 8, 2011).

The *Vanderson* court cited *Custis* for the proposition that a defendant cannot collaterally attack a state-court conviction the Government seeks to use in federal court. *Vanderson*, 2011 WL 553918, at *2–3. However, the court found that in *Custis*, the Supreme Court "was not faced with the question of whether *admissions* made in those state-court proceedings could never be challenged in a subsequent prosecution." *Id.* at *3. The court then analyzed the voluntariness of the defendant's admissions in his plea proceedings under the framework of the Fourteenth Amendment Due Process Clause's prohibition of the use of involuntary confessions. *Id.* at *5.

The Court today declines to follow *Vanderson*. The *Vanderson* court's analysis requires adjudication of the voluntariness of Mr. Carver's Guilty Plea, which this Court finds would not be a natural extension of controlling precedent. Instead the Court finds the *Custis* holding provides sufficient guidance on the issue of whether collateral attacks on state-court guilty pleas are permissible in non-habeas federal proceedings, even beyond sentencing hearings. In *Custis*,

the Supreme Court held that a defendant could not collaterally attack the validity of his state-court guilty plea (based on ineffective assistance of counsel) at a federal sentencing hearing because no statutory or constitutional authority had been granted to federal courts to adjudicate the claim. 511 U.S. at 496–97. By contrast, the Supreme Court found that the states' creation of direct appeals and postconviction proceedings as well as Congress' creation of federal habeas proceedings gave courts specific jurisdiction to adjudicate defendants' attacks on the validity of state-court convictions. *Id.* at 497. The Court noted that the issues of ease of administration and promotion of the finality of judgments also counseled against allowing collateral attacks on guilty pleas at federal sentencing hearings. *Id.* at 496–97.

Here, the Court finds Mr. Carver's argument—that his admissions during his plea hearing were involuntary—amounts to a collateral attack at a proceeding that has an independent purpose from evaluating the validity of the Guilty Plea, and thus, the reasoning of *Custis* is applicable. Similar to the determinations of the Court in *Custis*, here Mr. Carver both: (1) admits that he may properly litigate the validity of his Guilty Plea in state court; and (2) fails to provide any congressional or constitutional authority allowing the Court to evaluate the Guilty Plea here. The Court also finds the same concerns with respect to ease of administration and promoting the finality of judgments that informed the *Custis* Court, apply here. Specifically, while the parties have filed the transcript from Mr. Carver's state-court plea proceeding, the fact-intensive analysis required to determine the voluntariness of his plea would require the Court to gather further information about the information exchanged between ADA Swink, Mr. Swinger, and Mr. Carver, which would likely delay the administration of justice in this case. Therefore, though the parties have argued the merits of whether Mr. Carver's admissions were voluntary, because the arguments amount to a collateral attack on the Guilty Plea, the Court finds they are

7

not appropriate for adjudication in this proceeding and no grounds exist for suppressing the Guilty Plea or supporting statements.

    *B. Admissibility under the Federal Rules of Evidence*

"Relevant evidence is admissible" at trial, while "[i]rrelevant evidence is not admissible." Fed. R. Evid. 401. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 402. A "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, Mr. Carver argues that the crime to which he plead guilty, aggravated assault, does not require use of a gun and that, in his plea colloquy, he never admitted to any specific facts regarding possessing or discharging a firearm. (Doc. No. 52 at 7–8.) Mr. Carver therefore concludes that, because his charges before this Court require the Government to prove that he possessed and fired a firearm, the Guilty Plea is not relevant. (*Id.* at 8.)

In Tennessee, "a plea of guilty, understandably and voluntarily entered on the advice of counsel, constitutes an admission of all facts alleged." *State v. Gold*, No. M2005-00186-CCA-R3-CD, 2006 WL 772006, at *3 (Tenn. Crim. App. March 28, 2006) (citing *Shepard v. Henderson*, 449 S.W.2d 726, 729 (Tenn. Crim. App. 1969)). The factual allegations against Mr. Carver in his state-court aggravated assault conviction included possession and discharge of a firearm. (*See* Doc. No. 54-2 at 9.) ADA Swink read the allegations into the record during Mr. Carver's plea colloquy, which described witnesses seeing Mr. Carver approach someone and shoot them. The Court finds that, under Tennessee law, Mr. Carver's decision to enter the Guilty

Plea was a decision to admit the truth of those facts. Based on the conduct alleged in the state-court indictment, the Court today finds that the Guilty Plea and associated statements are highly relevant to the current drive-by shooting and discharging a firearm charges.

In the alternative, Mr. Carver argues that, even if his Guilty Plea and statements in support are relevant, the Court should exclude them under Rule 403 because, if they are admitted, "the jury is less likely to thoroughly examine the Government's evidence on those related federal charges." (Doc. No. 52 at 9.)

With respect to Rule 403, "unfair prejudice" is interpreted as "an undue tendency to suggest a decision based on *improper considerations*; it does not include the prejudicial 'damage to a defendant's case that results from the *legitimate* probative force of relevant evidence.'" *United States v. Wright*, 102 F. App'x 972, 979 (6th Cir. 2004) (quoting *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999)) (emphasis added). In *Wright*, the defendant argued that his state-court guilty plea to criminal menacing should be excluded under Rule 403 from trial on a federal charge of being a felon in possession of a firearm, even though both charges arose from the same factual basis. *Id.* at 978. Even though the state-court conviction was for an entirely differently crime than his federal charge, the Sixth Circuit upheld the district court's refusal to exclude the evidence because it did not create a risk that the jury would reach a decision based on improper considerations and, thus, did not lead to "unfair prejudice." *Id.* at 981.

The Sixth Circuit's line of reasoning applies with even more force here, where, the Guilty Plea includes an admission to the very conduct with which Mr. Carver is charged in the current indictment (drive-by shooting and discharging a firearm). The Court finds the Guilty Plea is evidence properly admitted as an admission of a party opponent, and any potential risk that a

9

jury will give it undue weight can be cured by an instruction that the jury is to consider all evidence presented. The Court finds Mr. Carver's Guilty Plea and statements in support should not be excluded under Rule 403.

### III. CONCLUSION

For the reasons stated above, Mr. Carver's Motion to Suppress is **DENIED**.

It is so ORDERED.

Entered this the ___2nd___ day of July, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT